```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                      SOUTHERN DIVISION
```

SAMUEL L. JOHNSON,                *
                                  *
     Plaintiff,                   *
                                  *
vs.                               *   Civil Action No. 05-00217-KD-B
                                  *
JO ANNE B. BARNHART,              *
Commissioner of                   *
Social Security,                  *
                                  *
     Defendant.                   *

## REPORT AND RECOMMENDATION

Plaintiff Samuel L. Johnson ("Plaintiff") brings this action seeking judicial review of the final decision of the Commissioner of Social Security denying his claim for supplemental security income under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq.  This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Oral argument was held on February 2, 2006.  Upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner be **REVERSED** and **REMANDED.**

## I.   Procedural History

Plaintiff protectively filed an application for disability benefits on September 28, 2000, alleging disability since February 1, 1998 due to a depressive disorder NOS, nerves, hypertension, borderline intellectual functioning, and a back injury/low back

pain.  (Tr. 20, 49-50, 80, 89, 93, 181-182).[1]  Plaintiff's application was initially denied and upon his request for reconsideration.  (Id. at 57-61).  Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ").  (Id. at 62).[2]  On July 2, 2003, ALJ Stuart J. Wein ("ALJ Wein") held an administrative hearing which was attended by Plaintiff, his representative and a vocational expert.  (Id. at 178-209).  On October 16, 2003, ALJ Wein issued an unfavorable decision in which he concluded that while Plaintiff has the severe impairment of borderline intellectual functioning/mild mental retardation, his impairment does not meet or medically equal one in the Listings.  (Id. at 17-27).  ALJ Wein determined that Plaintiff retains the residual functional capacity ("RFC") for routine repetitive tasks at all exertional levels and, utilizing the testimony of a vocational expert, also concluded that he can perform other work existing in significant numbers in the national economy; thus, he is not disabled.  (Id.)  Plaintiff sought review of the ALJ's decision, and on March 10, 2005, the AC denied his request for review; thus, the ALJ's decision became final.  (Tr. 4-6, 11-12).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g)

---

[1]Plaintiff previously filed an SSI application on June 29, 1994, which was denied on June 27, 1996; he appealed that decision and his claim was remanded on February 11, 1998 and denied on October 20, 1999. (Id. at 37-45).

[2]Plaintiff filed additional SSI applications in October 2000 and April 2000.  (Id. at 72-77).

and 1383(c)(3).

**II.   Background Facts**

Plaintiff was born on July 21, 1959, and was 43 years old at the time of the administrative hearing. (Tr. 22, 72, 186-187). He attended special education classes and completed the 12th grade. (Id. at 187). Plaintiff does not have any past relevant work ("PRW"). (Id. at 26, 187). At the July 2, 2003 hearing, Plaintiff testified that his back problems made it difficult for him to do any lifting. (Id. at 191, 193-196). According to Plaintiff, 50 pounds is the heaviest weight he has lifted in the past year. (Id. at 191). Plaintiff also testified that he has problems with his left elbow. (Id. at 192-194). Plaintiff testified that he injured his elbow 4-5 years ago in a fight, that he sought medical treatment at USA hospital and Stanton Road Clinic for same, and that his elbow was placed in a cast for a month. (Tr. 192-194). According to Plaintiff, his elbow causes aches/pains and affects his ability to lift with his left hand. (Id. at 193-194). Plaintiff testified that his left hand is his dominant hand, that he can lift 50 pounds on his right side, but that he is limited to 5-10 pounds with his left side. (Id. at 191, 193-194). Plaintiff also testified that he does not think he can perform light jobs (laundry work, production, assembly type work - where he would not have to lift more than 20 pounds). (Id. at 195-196). According to Plaintiff, he spends his time sitting at home watching television,

or his niece picks him up to go to her house to sit, watch television and talk.  (Id. at 197-198).  As for household chores, Plaintiff reported that his stepmother pays his bills and does his grocery shopping.  (Id. at 198-199).  Plaintiff also testified that he has no hobbies, and does not exercise, perform any outside chores, household repairs or yard work.  (Tr. 198-199, 201).

**III.   Issues on Appeal**

A.   Whether the ALJ erred by failing to find that Plaintiff has a mental and physical impairment imposing an additional and significant work-related limitation of function to meet or medically equal Listing 12.05C, and in so doing, failed to state the weight he assigned to the opinions of State Agency physicians Drs. Shaikh and Eno, in violation of SSR 96-6p?

B.   Whether the ALJ erred by failing to evaluate Plaintiff's mental impairment as required by Section 416.920a?

**IV.   Analysis**

**A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  This Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence, and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[3]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of

---

[3]This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (finding that substantial evidence is defined as "more than a scintilla but less than a preponderance," and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.    Discussion**

An individual who applies for Social Security disability benefits must prove her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.

20 C.F.R. §§ 404.1520, 416.920.[4]  See, e.g., Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the case sub judice, the ALJ concluded that Plaintiff has the severe mental impairment of borderline intellectual functioning/mild mental retardation but does not meet/equal a Listings impairment, such that he is not disabled within the meaning of the Act.  See supra.  The undersigned's review of the relevant[5] evidence of record reveals that Plaintiff was treated from May 26, 1998-February 10, 2000 at the Mobile Mental Health Center ("MMHC").  (Tr. 128-135).  He complained of back pain, but denied any hallucinations or hearing voices.  (Id.)  He had an appropriate affect and appearance, and was given medication.  (Id.)

---

[4]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[5]While there are additional records in the file relating to other treatment Plaintiff has received, they are irrelevant for purposes of this appeal, and as such, merit no further discussion here.

6

On April 9, 2001, Plaintiff was examined by consultative examining physician Ilyas Shaikh, M.D. ("Dr. Shaikh"), at the request of the State Agency. (Id. at 138-142). Dr. Shaikh's examination of Plaintiff revealed: normal bilateral symmetrical motor strength of the upper/lower extremities to abduction, adduction, flexion and extension; normal fine motor skills; no rigidity/spasticity; grip strength of 5/5 and bilaterally symmetrical, intact sensations; a mal-healed old dislocation of the left elbow with decreased extension of the left arm (left arm was semi-flexed and he was unable to extend beyond 30 degrees); range of motion deficit at his left elbow (unable to fully extend and flexion was about 130); supination and pronation of left elbow/forearm was noted as compromised; he had a mild range of motion deficit; only near normal flexion of the left elbow; normal extension/rotation of the dorsolumbar spine; and only near normal flexion of the dorsolumbar spine. (Id.) Dr. Shaikh's impression was that Plaintiff had a left arm range of motion deficit due to mal-union of elbow, a history of low back pain, a history of low to average intellegence, and a history of atypical psychosis. (Id.) Dr. Shaikh opined that "Mr. Johnson has been throughly examined in the past for mental retardation. He has also been treated for his Lumbo-sacral strain. He has permanent disability to use his left arm." (Tr. 140).

On April 10, 2001, Jake Epker, Ph.D. ("Dr. Epker") conducted

a comprehensive psychological evaluation of Plaintiff, finding as follows (Id. at 143-145):

- his exam revealed no psychomotor agitation or retardation, he was alert/oriented, he had normal speech, he had goal directed thought processes, and his intelligence was in the extremely low to borderline range;

- he was diagnosed with a depressive disorder and borderline intellectual functioning; and

- it was found that he was able to perform most activities of daily living independently, he has been inconsistent with following treatment recommendations for his mood, he has had questionable diagnoses with regard to his hallucination reports, his report of variable shifts in mood and depressive symptoms suggest he was not experiencing a major depressive disorder and his history of brief terms of employment were not typically due to mental/physical problems.

Dr. Epker opined that Plaintiff could benefit from psychiatric treatment/counseling, and if compliant, would likely experience an improvement of his mood in the next 6-12 months, but that regardless, his mood does not significantly interfere with his ability to maintain independence in his activities of daily living. (Id. at 145).

On May 16, 2001,[6] State Agency psychological consultant Ellen Eno, Ph.D. ("Dr. Eno") reviewed Plaintiff's records and completed a Psychological Review Technique form and Mental Residual Functional Capacity assessment, noting as follows (Id. at 146-163):

---

[6] In his decision, the ALJ mistakenly references the date of this examination as September 28, 2000. (Id. at 23).

- regarding organic mental and affective disorders, he has borderline intellectual functioning and a depressive disorder nos;

- his mental impairments cause only a mild degree of limitation with regard to his ADLs and maintaining social functioning;

- he has a moderate degree of limitation in maintaining concentration, persistence or pace;

- he has no repeated episodes of decompensation;

- he was moderately limited in his abilities to understand/remember/carry out detailed instructions, interact appropriately with the general public, respond appropriately to changes in the work setting and set realistic goals or make plans independently of others; and

- he was not significantly limited in any other abilities.

Dr. Eno opined that Plaintiff should be able to remember/understand/carry out short, simple instructions and attend/concentrate for 2 hour intervals, but should have minimal interaction with the general public, infrequent changes in the work setting, and may need help setting realistic goals.  (Id. at 162).

1. **Whether the ALJ erred by failing to find that Plaintiff has a physical and mental impairment imposing an additional and significant work-related limitation of function to meet or medically equal Listing 12.05C, and in so doing, failed to state the weight he assigned to the opinions of State Agency physicians Drs. Shaikh and Eno, in violation of SSR 96-6p?**

Plaintiff claims that the ALJ erred in finding that he did not meet Listing 12.05C because he failed to determine whether the mal-union of his left elbow and/or his depression constitute a physical

9

and/or mental impairment imposing an additional and significant work-related limitation of function.  Plaintiff adds that in so doing, the ALJ failed to assign controlling weight to the opinions of State Agency physicians Drs. Shaikh and Eno.  As such, Plaintiff's appeal turns on the second prong[7] of Listing 12.05C: whether Plaintiff has a physical and/or mental impairment imposing an additional and significant work-related limitation of function. See, e.g., Berryman v. Massanari, 170 Fed. Supp. 2d 1180, 1185-1187 (N.D. Ala. 2001).

Listing 12.05C falls under § 12.00 MENTAL DISORDERS and provides that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied · · · · C. **A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function**.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (emphasis added).[8]  A claimant meets the criteria for presumptive disability under

---

[7]The ALJ noted in his decision that the records revealed that Plaintiff's full scale IQ was between 62 and 71 and that Dr. Epker described his IQ as 62.89 for borderline intellectual functioning. (Id. at 24-25). Likewise, at the administrative hearing, Plaintiff' IQ was identified as a verbal 76, performance 67 and full scale 69, which would place him in the borderline to MMR range.  (Id. at 203-204).  Thus, Plaintiff's IQ - and the first prong of Listing 12.05C - is essentially a non-issue here.

[8]See also e.g., Cobb v. Barnhart, 296 F. Supp. 2d 1295 (N.D. Ala. 2003); Davis v. Shalala, 985 F.2d 531 (11th Cir. 1993)(quoting Listing 12.05C).

Listing 12.05C when the claimant presents a valid IQ score of 60-70, an onset of impairment before age 22 *and* evidence of an additional and significant mental or physical impairment (i.e., having more than "minimal effect" on the claimant's ability to perform basic work activities).  See, e.g., Edwards by Edwards v. Heckler, 755 F.2d 1513, 1516 (11th Cir. 1985).[9]  Claimant bears this burden.  Id.

Based upon a review of the record, the undersigned finds that substantial evidence does not support the ALJ's determination that Plaintiff does not fulfill the second prong of 12.05C, which requires having "a physical or other mental impairment imposing additional and significant work-related limitation of function." With respect to Plaintiff's left elbow, the ALJ stated as follows (Tr. 24):

> Ilyas A. Shaikh, M.D., a neurologist, examined the claimant on April 9, 2001.  His impressions were that the claimant had a left arm deficit due to mal-union of the elbow, a history of low back pain, and a history of low average intelligence, and a history of atypical psychosis . . . .

Additionally, the ALJ also found as follows:

> . . . . **there is inadequate evidence that the claimant possesses a physical or other mental impairment that imposes an additional and significant work-related limitation of function, as required by Section 12.05** . . . . At the hearing, the claimant testified that he had

---

[9]See also e.g., Wilkinson on behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987); Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991); Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); Berryman v. Massanari, 170 F. Supp. 2d 1180, 1186-1187 (N.D. Ala. 2001); Cobb v. Barnhart, 296 F. Supp. 1295, 1296-1297 (N.D. Ala. 2003).

>
> broken his elbow four or five years earlier, and that his arm is crooked and affects his ability to lift. However, in July of 2000, the claimant stepped on a nail while helping his friend paint . . . and in April of 2002 he strained his back while doing heavy lifting . . . . Both incidents indicate that the claimant has not been limited by the condition of his elbow. Additionally, claimant has not received any treatment for his elbow during the pertinent period . . . .

(Id. at 24-25 (emphasis added)). Clearly, the ALJ's decision omits the fact that during the administrative hearing, Plaintiff testified that while he has the ability to lift on his right side, his ability to lift on his left side is limited to only five to ten pounds. See supra. Additionally, the ALJ's decision makes no mention of Dr. Shaikh's finding that Plaintiff has a range of motion deficit at his left elbow in that he is limited in his ability to extend his elbow, and that he has a permanent disability to use of his left arm. Id. Moreover, the ALJ failed to indicate what weight, if any, he accorded Dr. Shaikh's finding. SSR 96-6p; 20 C.F.R. §§ 404.1527(f)(2)(i)-(iii).

Under SSR 96-6p, the opinions of State Agency physicians must be treated by the ALJ as expert opinion evidence which can not be ignored:

> **State agency medical** . . . **consultants are highly qualified physicians** . . . **who are experts in the evaluation of the medical issues in disability claims under the Act**. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but

>not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 C.F.R. part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC). Because State agency medical . . . consultants and other program physicians . . . are experts in the Social Security disability programs, the rules in 20 C.F.R. [§§] 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians . . . . . **Administrative law judges** and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they **may not ignore these [State Agency] opinions and must explain the weight given to the opinions in their decisions**.

SSR 96-6p (emphasis added).  See, e.g., McCloud v. Barnhart, 166 Fed. Appx 410 (11th Cir. 2006)(unpublished)(holding, in part, that the case was due to be remanded both because the ALJ neither explained the weight he gave to the report of claimant's consulting physician nor why he discredited same regarding her ability to work, and because the ALJ ran afoul of the law when he failed to explain the weight he gave to the state agency physician's opinions, because the law requires that he consider such opinions and explain the weight assigned to same when he does not give controlling weight to a treating source).  Contrary to SSR 96-6p, here, the ALJ omitted any mention of Dr. Shaikh's finding that Plaintiff has a permanent disability to the use of his left arm. To the extent the ALJ rejected this aspect of Dr. Shaikh's evaluation, he is required to explain his reasons for doing so.

This is particularly true where the ALJ has in essence rejected the only medical evidence in the record regarding Plaintiff's elbow injury.  Accordingly, this case should be remanded.  Upon remand, the ALJ shall expressly address what weight, if any, he accords Dr. Shaikh's findings regarding Plaintiff's left elbow.  The ALJ may chose to re-contact Dr. Shaikh to solicit additional information regarding specific functional limitations resulting from Plaintiff's left arm deficit.

### IV. Conclusion

For the reasons set forth, and upon consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for supplemental security income, is due to be **REVERSED** and **REMANDED.**

The attached sheet contains important information regarding objections to this report and recommendation.

**DONE** this the **29**$^{th}$ day of **August, 2006.**

                                              **/s/ Sonja F. Bivins**
                                              **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

1.      **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

        A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.      **<u>Transcript (applicable where proceedings tape recorded)</u>**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                          **/s/SONJA F. BIVINS          
                                          UNITED STATES MAGISTRATE JUDGE**

15